# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Khadara-Ayan Yousuf, | **Civil No.: 12-cv-2191 JNE/SER** |
| Plaintiff, | |
| v. | |
| Fairview University Medical Center | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Khadara-Ayan Yousuf, *pro se*, 808 Berry Street Apartment 261, Saint Paul, Minnesota 55114.

Penelope J. Philips and Randi J. Winter, Esqs., Felhaber Larson Fenlon and Vogt, PA, 220 South Sixth Street Suite 2200, Minneapolis, Minnesota 55402-4505, on behalf of Defendant.

STEVEN E. RAU, United States Magistrate Judge

The above captioned case comes before the undersigned United States Magistrate Judge on a Motion to Dismiss, or in the Alternative for Summary Judgment, filed by Defendants Fairview University Medical Center ("Fairview") [Doc. No. 8]. This matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. (Order of Reference dated Jan. 11, 2013) [Doc. No. 13].

Plaintiff Khadara-Ayan Yousuf ("Yousuf") filed her *pro se* federal complaint alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, on September 7, 2012, which is 108 days after the Equal Employment Opportunity Commission (EEOC) issued its Dismissal and Notice of Rights ("Notice of Rights") of this dual filed charge. (Compl.) [Doc. No. 1 at 2]; (Compl. Ex. 1, "Continuation Form") [Doc. No. 1-1 at 3]. Because Yousuf's failure to meet the non-jurisdictional ninety-day limitation period of 42 U.S.C. § 2000e-5(f)(1) was a

1

consequence of circumstances wholly beyond her control, this Court recommends application of the doctrine of equitable tolling, and denial of Fairview's motion.

At the hearing on this matter on February 28, 2013, it became obvious to the Court that the record concerning the facts pertinent to Fairview's motion required augmentation in order to fairly consider the motion. Consequently, Yousuf was permitted to testify about her actions in pursuing her claims through the appropriate administrative agencies. (Hr'g Tr. dated Feb. 28, 2013, "Tr.") [Doc. No. 20 at 18–38]. Fairview was permitted cross-examination on these limited issues. (*Id.* at 26–36). Each party was also permitted the right to submit additional materials to the Court after receipt and review of the transcript. (Order dated Feb. 28, 2013) [Doc. No. 18].

## I. BACKGROUND

### A. Factual Background

Yousuf alleges she was harassed and unlawfully terminated on the basis of her race, color, and religion. (Compl. at 3–4). She seeks reinstatement and back pay. (*Id.* at 6).

From 2004 to 2009, Yousuf was a laboratory care technician at Fairview. (*Id.* at 5). On October 27, 2008, Yousuf took leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, because her husband had a car accident. (*Id.* at 5). Yousuf's husband lives in Belgium, so she traveled overseas to be with him. (*Id.*). Her FMLA leave period was supposed to end on January 28, 2009, but she called Fairview to extend it to February 16, 2009. (*Id.*). Yousuf alleges that a Fairview employee named Cindy Ness ("Ness") approved the extension. (*Id.*).

In early February, Yousuf's co-worker informed her that her name was "crossed off the schedule" at work. (*Id.*). Yousuf called Ness several times to discuss this; Ness did not return her calls. (*Id.*). Yousuf then called another Fairview employee, Chris Senn ("Senn"), who told

2

Yousuf "that [she] needed to come in to speak with [Senn] when [she] returned to work because they were in the process of reducing hours and [Yousuf] may be only given twenty hours a week to work." (*Id.*).

On February 16, 2009, Yousuf met with Senn, who informed her that "there were no hours for [Yousuf] to work at all due to budgetary constraints. [Yousuf] asked [Senn] if they replaced her and [Senn] said no." (*Id.* at 6). Yousuf filed a union grievance on February 25, 2009. (*Id.*). She attended a meeting with union and Fairview representatives on April 1, 2009, and was told she would receive a decision letter within fourteen days. (*Id.*). When fourteen days had elapsed and no letter arrived, she contacted her union representative, who informed her "that the decision was to not bring [Yousuf] back to work because [she] had failed to call in to extend [her] leave." (Continuation Form at 5).

Yousuf next arranged to meet with Fairview's Senior Human Resources Director, Charles McIntosh ("McIntosh"). (*Id.* at 5). McIntosh informed her that Human Resources would conduct an investigation. (*Id.*). Yousuf spoke to "several co-workers and obtained statements and proof that ten new hires were brought in along [*sic*] and even additional overtime was being granted to employees during this time of 'budgetary constraints.'" (*Id.*). McIntosh did not return Yousuf's follow-up telephone calls. (*Id.*). She called once more, and McIntosh instructed her to contact Thomas Rodriguez ("Rodriguez"), another Fairview Human Resources employee. (*Id.*). Yousuf contacted Rodriguez, who told her "there was a mistake and that [Yousuf] would receive [her] job back with back pay." (*Id.*).

On April 27, 2009, Yousuf met with Rodriguez and her union representative, showing them the statements she collected. (*Id.*). The outcome of that meeting, according to the Complaint, was that Yousuf "was good to go and just needed to wait to hear from Fairview for

[her] start date to return to work." (*Id.*). Nevertheless, no one from Fairview ever called Yousuf regarding her start date, so once again she called McIntosh, who instructed her to call Rodriguez. (*Id.*). Rodriguez told her to "wait a little longer for further instruction and that he would get back to [her]." (*Id.*).

In May 2009, a former co-worker called Yousuf to ask her if she was expecting a baby. (*Id.*). The former co-worker told Yousuf that she heard Ness comment that Yousuf "will probably be pregnant when [she gets] back from leave" and that Ness planned to terminate Yousuf before she finished her FMLA leave, or words to that effect. (*Id.*). Yousuf alleges that Ness believed Yousuf would be pregnant because "many of the Somali women who also worked [at Fairview] were frequently pregnant." (*Id.*).

Upon learning about Ness's alleged statements, Yousuf called and emailed Rodriguez, but each time she attempted to reach him the Fairview Human Resources secretary told her Rodriguez was not in the office. (*Id.*). She then called the union, and learned that Rodriguez no longer worked at Fairview. (*Id.*). Her union representative told her that "the plans to reinstate [her] job were cancelled and that there was nothing they could do for [her]." (*Id.*).

After unsuccessfully pursuing a resolution with her managers and Fairview Human Resources, Yousuf wrote and called Mark Eustis, then CEO of Fairview, several times to explain her situation and ask for help. (*Id.*). The only response she received was a letter "saying that the office of Civil Rights is investigating [her] case." (*Id.*).

**B. Procedural History**

Fairview's Motion to Dismiss is based on its assertion that Yousuf's suit is time-barred, so a detailed evaluation of the facts leading up to the filing of the action is essential to this

4

Report and Recommendation. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J., "Fairview Mem.") [Doc. No. 10 at 3].

On a timely basis, Yousuf dual filed a Charge of Discrimination with the MCDR and the EEOC on August 7, 2009.[1] (Charge of Discrimination, Ex. 1 attached to Transmittal Aff. of Randi J. Winter, "Winter Aff.") [Doc. No. 11-1]. Dual filing is a process by which a claimant files a charge of discrimination with a state or local agency, which then sends a copy of the charge to the EEOC. U.S. Equal Emp't Opportunity Comm'n, Fair Emp't Practices Agencies and Dual Filing, www.eeoc.gov/employees/fepa.cfm (last visited Apr. 2, 2013). The local agency "will usually retain the charge for processing," but the EEOC will do an independent review after the local agency completes its work. *Id*.

Yousuf's Charge of Discrimination alleged that

"[w]hen [Yousuf] returned to work she was 3.5 months pregnant. Once Senn knew [Yousuf] was pregnant, she informed [Yousuf] that there were no more hours for her to work. [Yousuf] realized that other employees were receiving extra hours that should have been given to her . . . [Senn and Ness], Caucasian females, continually commented on her pregnancy. [Yousuf] claims that Senn and Ness asked her whether she was sure she wanted to work instead of raising a family. [Yousuf] also claims that Senn and Ness would continuously comment, "those people always have babies," and, "she will probably come back [from FMLA leave] pregnant."

(Charge of Discrimination).

The MDCR made a finding of no probable cause in Yousuf's case on January 19, 2012. (Continuation Form at 1–2). The MCDR's Notice of Rights to Private Action was mailed to her current address, in Saint Paul, Minnesota. (*Id.*) MDCR transferred Yousuf's case to the EEOC at the conclusion of its investigation. (Tr. at 22). Following its review of the case, the EEOC

---

[1] Yousuf's Charge of Discrimination alleges that the discrimination took place between February 2, 2009 and February 17, 2009. (Charge of Discrimination, Ex. 1 attached to "Winter Aff.") [Doc. No. 11-1]. She dual filed her Charge of Discrimination approximately 171 days after the alleged unlawful practices occurred and her filing was therefore within the 300 days required under 42 U.S.C. § 2000e-5(e)(1).

adopted the findings of the MDCR, and provided a Notice of Rights on May 22, 2012. (Continuation Form at 3). Inexplicably, the EEOC mailed Notice of Rights to her former address, in Brooklyn Park, Minnesota.

At the hearing on this matter, Yousuf explained her housing situation to the Court. (Tr. at 7–38). When Yousuf filed her Charge of Discrimination, she lived in Brooklyn Park, Minnesota; the Charge of Discrimination reflects that address.[2] (Charge of Discrimination). She testified that she became homeless after losing her job in 2009, and did not obtain stable housing until December 2010. (Tr. at 7, 19). In the interim, she was living "house to house," but with a friend's assistance she obtained a post office (P.O.) box. (*Id.* at 7–8). Yousuf informed the MDCR, and thereafter the MDCR mailed all correspondence to her P.O. box. (*Id.* at 8, 20). She used the P.O. box until she obtained her new address in Saint Paul on December 8, 2010. (*Id.* at 8, 21). After that, MDCR mailed all correspondence to her Saint Paul address. (*Id.*). Yousuf continues to reside at her Saint Paul address. (*Id.* at 8). Thus, for approximately three years, Yousuf kept the MDCR apprised of her address and the MDCR successfully corresponded with her.

At the hearing on this matter Yousuf testified that she assumed the EEOC had her Saint Paul address as well. (*Id.* at 28). There is evidence that the EEOC sent correspondence to her Saint Paul address. In a letter dated July 28, 2011, the Milwaukee Area Office of the EEOC wrote to Yousuf at her Saint Paul address to inform her of her right to EEOC review; this correspondence predates the date of the Notice of Rights by approximately ten months. (Letter dated July 28, 2011, Ex. 1 attached to Letter of Khadara-Ayan Yousuf) [Doc. No. 23-1 at 5]. Yousuf testified that in January 2012, the MCDR informed her that it "[handed her case] over to

---

[2] In the interest of simplicity, Yousuf's addresses are referred to as "the Brooklyn Park address," the P.O. box, and "the Saint Paul address."

the EEOC." (Tr. at 8). The record in this case does not reveal whether Yousuf and the EEOC communicated via United States mail between July 28, 2011 and January 2012 when the MDCR transferred her case to the EEOC.

At the time of transfer, the MDCR told Yousuf not to call the EEOC. (Tr. at 23). Yousuf contacted the EEOC anyway. According to Yousuf, the EEOC told her, "We [are] going to look at it. So just wait. Don't call us." (*Id.* at 22). While the Court does not have the full record of the EEOC's proceedings in this case, it appears that Yousuf initially believed the EEOC's Minneapolis Area Office would review her file; the MDCR actually sent her file to the Milwaukee Area Office. (*Id.* at 32-33). To track down her file, Yousuf called both EEOC area offices. (*Id.* at 28).

In the spring of 2012, Yousuf was in the hospital. (*Id.* at 22). After her discharge, she called the EEOC again, but could not get through to any employees. (*Id.*). Yousuf testified that in an attempt to get help, she contacted April Shaw ("Shaw"), a staffperson for Minnesota Congresswoman Betty McCollum. (*Id.* at 9). Shaw was instrumental in helping Yousuf work with the EEOC. (*Id.* at 22).

By July of 2012, Yousuf still had not received an EEOC decision, so Shaw called EEOC employee Marian Drew ("Drew"), who stated that the EEOC mailed its decision. (*Id.*). Presumably Shaw's call prompted the EEOC to review its files. The agency realized it erroneously sent its decision to Yousuf's Brooklyn Park address, an address Yousuf had not used in approximately three years. Yousuf testified that Drew told her "We apologize, we sent it to the wrong place, and now we will resend [a photocopy of the Notice of Rights] to you to your current address." (*Id.* at 9). Yousuf also testified that Drew told her that although the photocopy

of her Notice of Rights was dated May 22, 2012, Yousuf should "ignore that time. Because you didn't get it, you're going to start from the day that you got . . . the letter." (*Id.* at 24).

Yousuf submitted the envelope that contained a photocopy of her original Notice of Rights as an attachment to her response memorandum. (Envelope, Ex. 1 attached to Mem, of Law in Opp'n to Mot. to Dismiss or in the Alternative for Summ. J., "Mem in Opp'n") [Doc. No. 14-1]. The postmark on that envelope shows the letter was mailed from the 53203 ZIP code on July 20, 2012. (*Id.*). The envelope bears a return address from the EEOC's Milwaukee Area Office. (*Id.*). Yousuf filed the instant action on September 7, 2012— about forty-five days after actual receipt of the Notice of Rights, assuming the letter took no more than three days to travel from Milwaukee to Saint Paul.[3]

In January 2013, Drew sent a letter to Yousuf, which stated in relevant part:

> On May 22, 2012, we sent to [the Brooklyn Park address] a Dismissal and Notice of Right to Sue. I recall receiving a call from you in July 2012. Prior to your call, I was also contacted by April Shaw of Congresswoman Betty McCollum's Office regarding the status of your charge. After checking our system, I informed you and Ms. Shaw that your charge had been dismissed on May 22, 2012, and that the notice had been inadvertently sent to your former address. You indicated that you had not received it. On or around July 20, 2012, we mailed a copy of the original [Notice of Rights] to your current address [in Saint Paul].

(Letter dated Jan. 30, 2013, "Drew Letter") [Doc. No. 22].

## II.   STANDARD OF REVIEW

Fairview filed a Motion to Dismiss, or in the Alternative for Summary Judgment. [Doc. No. 8]. In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." *PureChoice, Inc. v. Macke*, 07cv1290 (DWF/SRN), 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

---

[3]   Courts have presumed a three-day standard for normal mail delivery in similar circumstances. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984).

8

If matters outside that limited universe are considered, however, the motion to dismiss is converted into a motion for summary judgment under Rule 56. In this case, the Court accepted testimony from Yousuf, and received into evidence a copy of the Drew letter. The testimony and evidence are not matters "necessarily embraced by the pleadings," but are crucial to a complete understanding of the facts surrounding the filing of Yousuf's Complaint. Therefore, the Court converts Fairview's Motion to Dismiss into a Motion for Summary Judgment.[4] *See* Fed. R. Civ. P. 12(d); *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002).

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322.

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, rather, they must by affidavits, "depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see also United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.

---

[4] It is appropriate to note that the Court, not the Parties, converted this Motion into a motion for summary judgment. Conversion was necessary because the Plaintiff testified at the hearing and submitted an exhibit, both of which are outside the scope of the pleadings. This Report and Recommendation should not be construed as precluding either side from filing dispositive motions in the future if desired.

1997), *cert.denied*, 523 U.S. 1040, (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995).

Because Yousuf is *pro se*, this Court must construe her Complaint liberally. *Norman v. Schuetzle*, 585 F.3d 1097, 1117 (8th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, a *pro se* complaint must allege sufficient facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981) ("*pro se* litigants must set forth [a claim] in a manner which, taking the pleaded facts as true, states a claim as a matter of law"); *see also Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001); *Larson v. Goodman*, 09-cv-3600 (PAM/AJB) 2010 WL 4568042, *5 (D. Minn. Sept. 28, 2010) (citing *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980)).

### III. DISCUSSION

This case arises under Title VII of the Civil Rights Act of 1964, which establishes a mandatory "administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citation omitted). A claimant must "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue. Once an individual receives notice of the right to sue, she has ninety days in which to file suit." *Id.* (citing 42 U.S.C. § 2000e–5(f)(1)).[5] "Generally, the ninety-day filing period begins to run on the day the right to sue letter is received at the most recent address that a plaintiff has provided the EEOC." *Hill v. John Chezik Imp.*, 869 F.2d 1122, 1124 (8th. Cir. 1989). The claimant bears

---

[5] Yousuf filed a copy of her right-to-sue letter from the EEOC with her complaint, demonstrating that she exhausted her administrative remedies. (Continuation Form at 3).

the responsibility to "provide the [EEOC] with notice of any change in address and with notice of any prolonged absence for that current address."[6] 29 C.F.R. § 1601.7(b).

### A. The Doctrine of Equitable Tolling

Fairview argues Yousuf's suit is untimely, because she filed it more than ninety days after the date stamped on the Notice of Rights, in contrast to the date she actually received the Notice of Rights after it was mailed a second time. The Eighth Circuit has held that "the ninety-day limitation period of 42 U.S.C. § 2000e-5(f)(1) is not jurisdictional and is therefore subject to equitable tolling." *Hill*, 869 F.2d at 1123-24; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (noting that time requirements in lawsuits between private litigants customarily are subject to equitable tolling). Accordingly, the question before the Court is whether equitable tolling applies when the EEOC mistakenly mailed her Notice of Rights to an address not used since 2009, even though it had already successfully used her Saint Paul address at least once before.

In Title VII cases, equitable tolling is severely limited and reserved for situations when the late filing was a result of circumstances that "were truly beyond the control of the plaintiff." *Hill*, 869 F.2d at 1124. Equitable tolling is "applied where a party acts diligently, only to find himself caught up in an arcane procedural snare." *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006) (citing *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 689 N.W.2d 196, 202 (S.D. 2004); *see also Longaker v. Boston Scientific Corp.*, 872 F. Supp. 2d 816, 821 (8th Cir. 2012); *McConnell v. Derwinski*, 4-88-1070 (JMR/JEC), 1991 WL 40393, at *3

---

[6] The facts in this case are somewhat novel for this District because, as noted above, they involve an instance of dual filing. This procedure is different from filing with the EEOC alone, a fact pattern that appears to be more common in this District and the Eighth Circuit at large. Other circuits, however, have encountered dual-filing cases; notable decisions are examined in this Report and Recommendation.

(D. Minn. Mar. 19, 1991). A plaintiff's *pro se* status by itself does not constitute grounds to equitably toll the statute of limitations. *See Howard v. Boatmen's Nat'l Bank*, 230 F.3d 1363 (8th Cir. 2000); *Brooks v. Ferguson-Florissant Sch. Dist.*, 113 F.3d 903 (8th Cir. 1997). Further, a court will not disregard procedural requirements that Congress established because of its sympathy for particular litigants. *See Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797–98 (8th Cir. 1998).

*Hill* contains a non-exhaustive list of some reasons that a court may toll the statute of limitations, including when: (1) the EEOC's notice was inadequate, (2) a motion for appointment of counsel is pending, (3) the court has led the plaintiff to believe all statutory requirements have been satisfied, and (4) the defendant's conduct lulled the plaintiff into inaction. 869 F.2d at 1124 n.2.

Recognizing that the doctrine is a limited one, the Court recommends applying equitable tolling in this case, because it appears that the EEOC's failure to use Yousuf's Saint Paul address was simply an administrative mistake. The July 28, 2011 letter establishes that the EEOC had Yousuf's Saint Paul address, but failed to use it in May 2012 when mailing her Notice of Rights. Because the EEOC's decision did not reach Yousuf until July 2012, she was not in actual receipt, and therefore on notice of her right to file a federal law suit, until that time. *See Hill* 869 F.2d at 1124. In addition to this, Yousuf has been extremely diligent in pursuing her case. Given that the EEOC apparently made a purely administrative error, she should not be penalized for the agency's mistake.

### B. Yousuf's Changes of Address

Yousuf had several changes of address between the time she filed her Charge of Discrimination with the MDCR and the MDCR's transfer of the file to the Milwaukee Area

12

Office of the EEOC. Fairview, relying on *Hill*, argues that Yousuf was obligated to notify the EEOC of each address change. (Fairview Mem. at 5-6). Reviewing the timeline, however, shows that *Hill* is not analogous to the instant case. Hill filed a charge of discrimination with the EEOC alone, whereas this case was dual filed. *Hill*, 869 F.2d at 1123; (Tr. at 3–5). In *Hill*, the plaintiff moved and failed to notify the agency of her new address while her case was under review. *Hill*, 869 F.2d at 1123. Here, Yousuf continually updated the original agency to receive her Charge of Discrimination whenever her address changed. Despite these address changes, she received correspondence from the MDCR successfully throughout the investigation, and at least one letter from the EEOC. (Letter dated July 28, 2011).

Fairview appears to argue that although Yousuf had been living at a single residence for over a year, she had an obligation to call the EEOC in January 2012 when her case was transferred, and inform the agency that her address was the same as it was in December 2010. This artificial obligation is nonsensical. *Hill* and the language in 29 C.F.R. § 1601.7(b) make clear that should a claimant's address change while a claim is under review, the claimant has a duty to advise the agency. *Hill*, 869 F.2d at 1124. But it does not follow that Yousuf must call the EEOC to say, "My address is the same as it has been for over a year." This is especially true when the EEOC had already corresponded with Yousuf at her Saint Paul address. There is undoubtedly a duty to notify the agency of an address change, but no duty can be found that a charging party must notify the agency of no new address. Any other conclusion leads to irrational and onerous burdens on claimants, forcing them to call the EEOC on a regular basis to inform the agency that there is no change to their address.

Fairview further argues that the EEOC was simply bewildered by the many addresses Yousuf held, and "had a one in three chance of guessing which address was correct when it

mailed Yousuf's right-to-sue letter," and that the agency made an "unlucky guess."  (Def.'s Post-Hr'g Mem. in Supp. of Dispositive Mot., "Fairview Additional Briefing") [Doc. No. 21 at 3]. Nonetheless, the EEOC's Milwaukee Area Office mailed at least one letter to Yousuf at her Saint Paul address successfully, establishing that the agency had that address on file at least as early as July 28, 2011.  (Letter dated July 28, 2011).  Had Yousuf moved during the time that the EEOC was reviewing her file, Fairview would doubtless be correct.  But, by the time the EEOC received her file in early 2012, Yousuf had not changed addresses in approximately fourteen months.

In support of its Motion, Fairview cites other Eighth Circuit cases that involve claimants who filed only with the EEOC, and changed addresses while their EEOC claim was under review.  Those cases are different from this case, because in each one the claimant only filed with the EEOC, and did not dual file.  Put simply, in those cases the claimant had only one agency to notify when changing addresses, and failed to do so.  In *Williams v. Thomson Corp.*, 383 F.3d 789 (8th Cir. 2004), the claimant neglected to notify the EEOC of her new address for approximately one month, even though she was aware a decision was pending. *Id.* at 791. Furthermore, the claimant in *Williams* never reached out to the EEOC, whereas Yousuf received at least one letter from the EEOC during the time her case was under investigation.  (Letter dated July 28, 2011).  Similarly, *Howard v. Boatmen's Nat. Bank of St. Louis*, 2000 WL 1448669 (8th Cir. 2000, Sept. 29, 2000), is distinguished easily, since it involves a plaintiff who filed only with the EEOC, then moved and failed to provide the EEOC with a forwarding address.

Noting an absence of cases involving dual filing in the Eighth Circuit, Fairview argues that the Court should adopt the reasoning in *St. Louis v. Alverno College*, 744 F.2d 1314 (7th

Cir. 1984), a decision that is not binding on this Court. (Fairview Additional Briefing at 1-3). In that case, the Seventh Circuit held that the limitations period begins when the plaintiff receives actual notice, unless he or she is at fault for not receiving the actual notice.

On the surface, those facts appear similar, because *Alverno College* involved dual filing, and a plaintiff who moved while his claim was still pending with both agencies. *Alverno College*, 744 F.2d at 1315. *Alverno College* is an extreme case—the claimant dual filed in 1973 and moved in 1975. *Id.* The state agency made a finding of no probable cause in 1979, and the EEOC did not complete its work until two years later. *Id.* Over nearly a decade of investigation and review, there appears to be no evidence in *Alverno College* that the plaintiff ever contacted the EEOC until 1982. *Id.* In contrast, Yousuf successfully received correspondence from the EEOC, and Yousuf and Shaw contacted the agency, even tracking down the file after it was sent to the Milwaukee Area Office instead of an area office in this state. (Letter dated July 28, 2011); (Tr. at 32–33).

*Houston v. Sidley & Austin*, 185 F.3d 837 (7th Cir. 1999), tempers the *Alverno College* holding. There the Seventh Circuit revisited this issue, and in at least one situation, permitted a suit to go forward when the plaintiff had not filed within ninety days. *Sidley & Austin*, 185 F.3d at 839 (holding that when right-to-sue letter is sent via registered mail, ninety days "presumptively begins to run on the day the plaintiff actually receive[s] the letter"). This Court is hesitant to adopt the reasoning from *Alverno College*, especially when a later case appears to head in a more lenient direction.

Fairview also asserts that *Abraham v. Woods Hole Oceanographic Institute*, 553 F.3d 114 (1st Cir. 2009), supports its Motion. *Abraham* has never been cited or adopted in any court in the Eighth Circuit. In addition, the facts in *Abraham* are very different from the facts in this

15

case. Abraham informed the state agency of the change in address on November 9, 2006, only two weeks before the EEOC sent out its right-to-sue letter on November 26, 2006. *Id.* at 120–21. With such a relatively short timeframe, it is understandable that address updates may not efficiently and timely transfer from one agency to another. Here, Yousuf had consistently updated the MDCR on her changes in address, and received a letter from the EEOC in July 2011. The long history of successful communication between Yousuf, the MDCR, and the EEOC distinguishes *Abraham* from this case.

In sum, the cases Fairview cites are factually dissimilar. Yousuf did not move while the EEOC was considering her file. To the contrary, she moved over a year before the EEOC received her case. The Milwaukee Area Office had already successfully contacted her at her Saint Paul address at least once. While it is clear that claimants have a duty to notify the EEOC of a change in address if the agency is considering their file when they move, the case law does not support the notion that there is a duty to notify the agency that one's address remains the same.

### C. Yousuf Did Not Sleep on Her Rights

Above and beyond the fairly obvious differences between this case and those cases Fairview relies upon, the Court recommends application of equitable tolling because Yousuf pursued her discrimination claim steadfastly. She communicated with both the MDCR and the EEOC extensively, and otherwise took every step she could to ensure that her claim was reviewed and decided properly. No view of the record suggests that Yousuf was anything but tenacious in safeguarding and asserting her rights even before she dual filed. When she learned that she no longer had a job, she worked for months with her union representatives, managers, two Human Resources employees, and even attempted to call the Fairview CEO. Then, when

16

she became homeless after losing her job, she had the foresight to obtain a P.O. box so that she could continue to receive correspondence from the MDCR about her discrimination claim. Despite being told by the MDCR not to call the EEOC, she called anyway. Finally, when she was unable to get satisfactory answers from the EEOC, she engaged her congresswoman's staff to actively seek information about the status of her claim at both the MDCR and the EEOC. Assuming the letter from the EEOC reached Yousuf on July 23, 2012, she filed the instant action within forty-five days of receipt. She is truly the diligent plaintif "caught up in an arcane procedural snare." *Pecoraro*, 435 F.3d at 875.

Yousuf's dogged persistence is very different from the plaintiff in *Bobbitt v. Freeman Cos.*, 268 F.3d 535 (7th Cir. 2001), a Seventh Circuit case Fairview cites in support of its Motion. There, the plaintiff delayed seven weeks in filing her lawsuit, blaming her "extensive travel schedule" for the delay. *Id.* at 537. When scrutinized, however, her "extensive travel schedule" accounted for seven days out of the seven-week delay, and the plaintiff could not explain why she had been unable to file on any of the other days between the mailing date and the date she actually received the right-to-sue letter. *Id. Bobbitt* is indeed a case where a plaintiff slept on her rights, but it is factually quite different from this case.

In sum, it is difficult to see what other actions Yousuf could have taken, unless the Court imposes a burden on claimants to call the EEOC to notify the agency that their address is unchanged. Finding no support in policy, case law, or common sense for that proposition, the Court recommends that Yousuf's case be classified as one where the mistake in mailing her letter was a circumstance "truly beyond the control of the plaintiff" and apply the doctrine of equitable tolling. *Hill*, 869 F.2d at 1124.

## IV. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED that** the Motion to Dismiss, or in the Alternative for Summary Judgment filed by Defendants Fairview University Medical Center [Doc. No. 8] be **DENIED**.

Dated: April 10, 2013

                                                    s/*Steven E. Rau*
                                                    STEVEN E. RAU
                                                    United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **APRIL 24, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.