UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Khadara-Ayan Yousuf,

       Plaintiff,

v.                                            Case No. 12-cv-2191 (JNE/SER)
                                              ORDER

Fairview Health Services d/b/a
University of Minnesota Medical Center, Fairview,

       Defendant.

Plaintiff Khadara-Ayan Yousuf, a U.S. citizen and a Muslim woman of Somali national origin, sued her former employer, Defendant Fairview Health Services ("Fairview"), for discrimination based on race, sex, pregnancy, religion, and national origin in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981. Defendant filed a motion for summary judgment. This matter is before the Court on Defendant's motion.

## I.     BACKGROUND

Yousuf worked as a lab technician at Fairview until she was terminated in February 2009. The terms of Yousuf's employment were governed by Fairview policies and a collective bargaining agreement.

In October 2008, Yousuf's husband was injured in a car accident in Belgium. Yousuf left for Europe on October 27, 2008 to care for him. Fairview approved a twelve-week leave of absence through January 19, 2009 pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. Yousuf alleges that she requested and received an extension until February 16 from Cindy Ness, the scheduling coordinator for the lab. Yousuf Dep. 50:4-9. Ness denies granting a leave extension. Ness Dep. 38:8-24. Yousuf does not allege that she discussed the

extension with Chris Senn and Priscilla Bormann, the decision makers who terminated Yousuf. Yousuf Dep. 44:1-5. Fairview scheduled Yousuf to work shifts on January 22, 23, 29, 30, and 31, and February 1, 5, 6, 12, 13, 14, and 15. Dep. Ex. 3 at FV000129-130; Dep. Ex. 4 at FV000120-121. It is undisputed that Yousuf missed these shifts.

Yousuf alleges that she became pregnant in December 2008 while on leave, though she did not tell Senn and Bormann about her pregnancy and there is no indication that she told anyone else at Fairview about the pregnancy. Yousuf Dep. 72:21-74:15. Yousuf also alleges that, in late January, a coworker told her that she had been crossed off the lab's work schedule and listed as a "no call/no show." Yousuf Dep. 58:24-60:10. Yousuf then called the lab to reach Ness and was transferred to Senn. *Id.* at 58:10-60:12. Her other supervisor, Bormann, was also on the phone but did not speak. *Id.* at 64:4-8. Yousuf says she told Senn that she was coming back on February 16. *Id.* at 48:1-12; 63:4-10. Senn told her that Fairview was cutting back on employee hours "[d]ue to the budget." *Id.* at 63:11-15. Senn also allegedly asked Yousuf: "Are you coming back? Are you staying [in] Germany and raising a family?" *Id.* at 63:15-17. At one point in the conversation, Senn allegedly said that she had "heard a rumor that [Yousuf was] staying in Germany and these people have babies left and right." *Id.* at 63:18-64:5. Yousuf replied, "What do you mean by that?" *Id.* at 63:21. Senn replied, "Never mind." *Id.* at 63:22. In deposition testimony, Senn denies making the comment about "these people" having babies. Senn Dep. 31:2-8. Senn also denies asking whether Yousuf planned to stay in Germany to raise a family but admits asking whether Yousuf planned to stay in Germany "to be with her husband." *Id.* at 30:4-31:1.

It is undisputed that Yousuf did not return to Minnesota until February 16. On February 10, 2009, Fairview sent Yousuf a letter of termination for "not returning from your FMLA when

we agreed on such a date." Dep. Ex. 11.[1] On February 17, 2009, Fairview prepared formal termination paperwork that stated Plaintiff was terminated for "Job Abandonment" and that "Employee failed to return to work on 1/20/2009 upon expiration of leave of absence." Dep. Ex. 19.

Yousuf filed a complaint with the Minneapolis Department of Civil Rights (MDCR), which was cross-filed with the Equal Employment Opportunity Commission (EEOC). The MDCR issued a finding of no probable cause, which was adopted by the EEOC. Yousuf filed a lawsuit against Defendant on September 7, 2012 and an amended complaint on November 8, 2013.

The complaint does not allege that Plaintiff is entitled to additional rights or procedures under the FMLA, Fairview's policies, or the collective bargaining agreement. Also, the complaint does not claim that Plaintiff was entitled to additional leave time under any of these sources or that Fairview breached any duty by not extending Yousuf's leave. Further, the complaint does not allege that Fairview has granted additional leave time to other employees in similar situations but refused to grant such leave to Plaintiff. Rather, Plaintiff claims that Fairview's decision to terminate her was based on national origin, sex, pregnancy, and religious discrimination in violation of 42 U.S.C. §§ 2000e *et seq*, and race discrimination in violation of 42 U.S.C. § 1981. Fairview filed a motion for summary judgment on July 31, 2014.

For the reasons set forth below, Defendant's motion for summary judgment is granted and Plaintiff's claims are dismissed.

## II. SUMMARY JUDGMENT STANDARD

---

[1] Citations to deposition exhibits refer to the exhibits attached to Docket No. 54, unless otherwise noted.

The standards applicable to summary judgment are well established and well known. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. DISCUSSION

This Court will first consider Plaintiff's sex and pregnancy discrimination claims and then consider the claims based on race, religion, and national origin.

**A. Discrimination Based on Sex and Pregnancy**

Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a)(1). Sex-based discrimination under Title VII includes discrimination based on "pregnancy, childbirth, or related medical conditions." *Id.* at § 2000e(k). Yousuf's sex discrimination claim is based on her pregnancy. Yousuf may show sex and pregnancy discrimination by showing that sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).

To establish her pregnancy-based discrimination claims, Yousuf must show that her employer was sufficiently aware of her pregnancy to be able to discriminate against her based on the pregnancy. *See Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 703 (8th Cir. 2012). As the Eighth Circuit stated in *Hunter*:

> In some cases, the claimant's protected status is obvious and it is reasonable to assume the employer was aware of such status, for example, if a woman is nine months pregnant with a protruding stomach she makes no attempt to conceal, awareness can be presumed. . . . In cases of discrimination based on a protected status that is not necessarily obvious, as is sometimes the case with religion or national origin, the employee must show that the employer was sufficiently aware of the employee's status to have been capable of discriminating based on it.

*Hunter*, 697 F.3d at 703 (internal citations omitted); *see also Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005-07 (7th Cir. 2001) (plaintiff failed to establish prima facie case of pregnancy discrimination in part because, even though she was visibly pregnant, she had not informed the employer of her pregnancy and could not prove the employer was aware of her pregnancy).

*Hunter* involved a gender non-conformity claim in which there was no evidence that the plaintiff's gender non-conformity was physically apparent, that the plaintiff had informed the relevant decision maker that he was transgender, or that the decision maker had "engaged in any dialogue or action that suggested he was aware of [the plaintiff's] protected status." *Hunter*, 697 F.3d at 703. The Eighth Circuit affirmed summary dismissal of the claim because, on these facts, the plaintiff "failed to establish that [the employer] knew [the plaintiff] was transgender[] or gender non-conforming." *Id.* at 704.

Similarly, the facts here show that Plaintiff's pregnancy was not physically apparent, that the relevant decision makers were not informed of the pregnancy, and that the decision makers did not engage in any dialogue or action suggesting they were aware of the pregnancy. Plaintiff's pregnancy was not physically apparent to Senn and Bormann before adverse

5

employment action was taken because Yousuf was on leave when she became pregnant and was still out of the country when Fairview sent her a letter of termination on February 10. Yousuf Dep. 73:12-74:14. Furthermore, it is undisputed that Senn and Bormann were not informed of the pregnancy before they made the adverse employment decision. Yousuf testified that she never told Senn and Bormann about her pregnancy. Yousuf Dep. 72:21-25. Yousuf also testified that she did not remember telling any coworkers that she was pregnant. Yousuf Dep. 73:1-15. Senn and Bormann have each testified that they were unaware of Yousuf's pregnancy until after the adverse employment decision was made. Senn Dep. 98:16-99:1; Bormann Dep. 98:12-17. Senn's alleged comment that "these people have babies left and right" and the question about whether Yousuf planned to stay in Europe to "raise a family" do not show that Senn was in fact aware of Yousuf's pregnancy because they do not directly reference Yousuf's pregnancy, and Yousuf does not assert that Fairview knew of her pregnancy.

Yousuf argues that pregnancy-based discrimination can be established when an employer assumes that an employee was pregnant, and that Senn's comments show Senn assumed Yousuf's pregnancy to exist. As support for the proposition that knowledge of pregnancy is not necessary for discrimination based on pregnancy, Yousuf relies on *Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431 (8th Cir. 1998). In *Deneen*, the employer knew the plaintiff was pregnant but did not know she had a pregnancy-related condition. *Id.* at 434, 436. The plaintiff's supervisor said that the plaintiff would not be allowed to return to work "because of her pregnancy complication," a condition that he only assumed to exist. *Id.* The court held that this comment was direct evidence of pregnancy discrimination. *Id.* at 436.

Plaintiff's reliance on *Deneen* is misplaced. *Deneen* stands for the basic proposition that pregnancy discrimination occurs when an employer knows an employee is pregnant and makes

6

an adverse employment decision based on the assumption that the pregnancy somehow makes her unfit to work, and the statute explicitly prohibits discrimination based on pregnancy-related conditions. As the *Deneen* court stated, the problem was that the plaintiff's employers "were acting on an assumption that she had a pregnancy-related complication that would not allow her to perform her job functions." *Id.* at 434. In this way, *Deneen* fits with the case law establishing that it is "unlawful for an employer to assume that pregnant women will be less productive than other employees." *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999). *Deneen* does not stand for the proposition that pregnancy discrimination can be shown even if the employer did not know that the employee was pregnant. That issue is addressed by *Hunter*, which articulates the unremarkable proposition that an employee "must show that the employer was sufficiently aware of the employee's status to have been capable of discriminating based on it." *Hunter*, 697 F.3d at 703.

Plaintiff also relies on *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123 (8th Cir. 2008). In *Roberts*, after an employee told her supervisor she was pregnant, the supervisor allegedly sighed and asked if she was going to keep the baby. *Id.* at 1125. Later, the supervisor allegedly raised the topic of the pregnancy and a few other issues and then stated "because of everything, we have to let you go." *Id.* The supervisor also allegedly stated that "with all the problems" the employee might be having soon, terminating the employee was "probably the best decision." *Id.* at 1128. The court held that these comments "may fairly be considered direct evidence that pregnancy was a motivating factor in the employment decision, sufficient in and of themselves to defeat a motion for summary judgment." *Id*. In *Roberts*, as in *Deneen*, the supervisor knew the employee was pregnant, discussed the pregnancy and the adverse employment action together in the same conversation, and used words that on their face

suggested that pregnancy was a motivation for the employment action. Senn did not know that Yousuf was pregnant and there is no evidence that Senn brought up Yousuf's pregnancy in any conversation about the adverse employment decision.

Plaintiff's pregnancy-based discrimination claims must fail because there is no evidence that her supervisors were aware of her pregnancy. Without knowledge, the pregnancy cannot have been a motivating factor in Fairview's decision to terminate Yousuf's employment.

### B. Discrimination Based on Race, National Origin, and Religion

Plaintiff alleges discrimination based on race in violation of 42 U.S.C. § 1981, and national origin and religious discrimination in violation of Title VII. Section 1981 protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Title VII prohibits employment practices in which "race, color, religion, sex, or national origin was a motivating factor." 42 U.S.C. § 2000e-2(m). Though each statute provides separate and distinct remedies, the elements of the claims are the same under both statutes. *See Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060, 1063 (8th Cir. 1997)). Under both statutes, a plaintiff may prove discrimination using either direct or indirect evidence. *See Putnam v. Unity Healthy Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003). The Court will first discuss the direct evidence and then turn to the indirect evidence, which is analyzed under the burden-shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*1. Direct Evidence of Discrimination*

"Direct evidence must be strong and clearly point to an illegal motive as the basis for the adverse employment action." *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 924 (8th Cir. 2014).

"Direct evidence reveals a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated adverse employment action." *Id*. "Direct evidence in this context is not the converse of circumstantial evidence," but "refers to the causal strength of the proof." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Plaintiff's proffered direct evidence of discrimination consists of Senn's alleged comment that "these people have babies left and right." Yousuf argues in her brief that the comment reflects animus toward Muslim women of Somali national origin because the comment reflects a stereotype that Somali women have many babies. Yousuf further argues that Fairview supervisors were focused on this stereotype because of a series of pregnancies by Somali employees at Fairview. For evidence of the stereotype and its existence at Fairview, Yousuf cites to Bormann's and Ness's deposition testimony collectively recalling three Somali women in the lab who had taken maternity leave and Yousuf's deposition testimony that a couple Somali employees in the lab were regularly pregnant. Yousuf Dep. 77:1-5; Bormann Dep. 99:14-100:8; Ness Dep. 52:3-54:6.

The Court will assume for present purposes—although there is no identifiable record support for the proposition—that Senn's comment referred to a protected class to which Yousuf belongs. Comments by a supervisor that relate directly to a plaintiff's employment may provide a specific link between bias and an adverse employment action sufficient to survive summary judgment. *See St. Martin v. City of St. Paul*, 680 F.3d 1027, 1036 (8th Cir. 2012) ("the evidence is direct because the discriminatory statements were made by the sole decisionmaker and directly related to [plaintiff's] ability to do the job"). A supervisor's comments may also be direct evidence of discrimination when they show that the supervisor believes a particular protected

9

class to which the employee belongs would do a worse job than other groups or otherwise harm the employer. For example, the Eighth Circuit has held that a school administrator's comment that "white people teach black kids . . . better than someone of their own race" was sufficient direct evidence of discrimination against an African-American teacher because the comment showed that the administrator "may believe white teachers on the basis of their race would do a better job than" the plaintiff. *King v. Hardesty*, 517 F.3d 1049, 1054, 1059 (8th Cir. 2008), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2010); *see also Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1324 (8th Cir. 1994) (supervisor's comment that "women were the worst thing" that had happened to the company warranted an inference of an improper motive for adverse employment action against female plaintiff).

However, supervisors' comments that suggest bias but are unrelated to the plaintiff's "employment status or to the conduct of the [employer's] business" are not direct evidence of discrimination. *Rivers-Frison v. S.E. Missouri Comm. Treatment Cntr.*, 133 F.3d 616, 619 (8th Cir. 1998); *see also Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (manager's comment that "black people are expected to leave their blackness behind" was not direct evidence of discrimination).

Applying this law, this Court finds that Senn's comment is not direct evidence of discrimination based on race, national origin, or religion. Even if the comment references Muslim women or Muslim women of Somali origin, it does not assert that they were poor job performers or otherwise detrimental for Fairview to have as employees. Thus, the comment is not direct evidence of discrimination against Yousuf based on her membership in these protected classes. *See King*, 517 F.3d at 1054, 1057-58 (superintendent's comments referring to African-

American employees as "big black bucks" and African-American students as "crack babies" and "ghetto kids" were not direct evidence of discrimination against an African-American teacher).

This Court does not find Senn's comments sufficient to establish "that illegal discrimination motivated the employer's adverse action," such that the *McDonnell Douglas* analysis need not be considered.  *Griffith,* 387 F.3d at 736.

*2. The* McDonnell Douglas *Analysis*

If there is no direct evidence of discrimination, the plaintiff must establish a prima facie case under the *McDonnell Douglas* framework by showing: "(1) she was a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008).  Such a showing creates a presumption of unlawful discrimination, requiring Fairview to produce a legitimate nondiscriminatory reason for its employment action.  *Id.* at 831-32.  The burden then shifts to Yousuf to show that Fairview's proffered reason for firing her is pretextual.  *Id.* at 832.

Fairview argues that Yousuf has not satisfied the fourth prong of the *McDonnell Douglas* analysis.  A plaintiff can satisfy the fourth prong by showing that the defendant assigned a nonmember of the protected class to do the same work or treated individuals outside the plaintiff's protected class differently.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Yousuf does not attempt to satisfy the fourth prong with comparative evidence because there is no evidence that other employees were granted leave extensions.  Furthermore, Fairview has presented evidence that a white employee was terminated shortly after Yousuf, also for failure to return from leave.  Doble Ex. D.  Finally, out of twenty shifts scheduled for Yousuf in January, February, and March, Fairview replaced Yousuf in six of those shifts—all six times by a

person of color, five times by a woman, and two times by other Somali employees.  Doble Ex. C.  In short, there is no comparative evidence of discrimination.

In addition to comparative evidence, a plaintiff can satisfy the fourth prong with "evidence of pretext—normally considered at step three of the McDonnell Douglas analysis." *Putnam v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003).  When establishing pretext, the plaintiff must show a material question of fact, which is "typically shown by evidence that the employer's explanation is unworthy because it has no basis in fact, or that a prohibited reason more likely motivated the adverse employment action."  *Chambers v. Travelers Companies, Inc.*, 668 F.3d 559, 567 (8th Cir. 2012) (internal citation and quotation marks omitted).

Plaintiff attempts to satisfy the fourth prong with evidence of pretext.  Fairview has presented evidence that Yousuf was terminated because she abandoned her job when she did not return from her leave as scheduled.  Plaintiff's evidence that this justification is pretext is based on Fairview's justification for termination lacking a basis in fact, Fairview's failure to adhere to its absenteeism policy, Fairview's explanations for the employment action shifting over time, and a discriminatory attitude as shown by Senn's comments.  The Court will consider each of these arguments in turn.

### i.   *Fairview's Stated Justification for Termination*

A plaintiff "may prove pretext by demonstrating that the employer's proffered reason has no basis in fact."  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006).  Yousuf argues that Fairview's stated justification of job abandonment lacks a basis in fact because Yousuf received an extension to her leave and returned before that extension expired.

Fairview has a written policy that governs leave extensions, which states: "In the event that an employee seeks an extension beyond the period designated as FMLA, one may be granted

12

at the discretion of Fairview." Dep. Ex. 9 at FV000054. Yousuf's employment with Fairview was also governed by a collective bargaining agreement that provides: "Other unpaid leaves of absence may be granted to employees at the discretion of the Employer on an individual basis." Doble Ex. B at FV000249.

Yousuf alleges that she contacted Deena Kubrom, a leave administrator for Fairview, to request additional leave and that Kubrom told her she needed to speak with Ness. Yousuf alleges that she then called Ness and asked for an extension until February 16, 2009, to which Ness replied: "That's fine." Yousuf Dep. 50:4-9. Ness denies granting an extension. Ness Dep. 38:8-24. Fairview also argues that Ness could not have authorized the leave extension because she lacked authority to do so.

For the purposes of this motion, the Court will assume that Yousuf received an extension from Ness and that Ness had the authority to grant such an extension. Nevertheless, the facts show that Senn and Bormann, the managers who decided to terminate Yousuf, did not know of the extension. Yousuf alleges that she spoke only with Kubrom and Ness about an extension. Yousuf Dep. 44:1-5. She does not allege that she discussed an extension with Senn or Bormann. Moreover, Ness wrote an email to Senn and Bormann on February 2, 2009 stating: "I gave [Yousuf] so much notice about being back by 1/19 and she did not return." Dep. Ex. 37. Also, in a February 5 email, Senn wrote: "We still have not heard [from Yousuf] and when Cindy [Ness] has spoken to her, there is no sense of urgency coming from [Yousuf.]" Dep. Ex. 30. Yousuf has not disputed these emails, which show that Senn and Bormann were unaware of any extension that others at Fairview may have purported to grant.

Because Senn and Bormann were the relevant employment decision makers, it is their beliefs that matter when looking to the stated justification for termination. If they terminated

13

Yousuf based on a mistaken belief that Yousuf had abandoned her job, then Yousuf's termination was unfortunate but it was not discriminatory. *See Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 847 (8th Cir. 2006) ("[E]ven if an employer fires an employee based upon a mistaken belief, the employee still must offer some evidence that racial animus was at the root of the termination."), *abrogated on other grounds by Torgerson v. City of Rochester,* 643 F.3d 1031 (8th Cir. 2011); *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 992 (8th Cir. 2006) ("Whether [employee] actually violated the company policy . . . is not dispositive.  The relevant question is whether the Plaintiffs can show that [the employer] was motivated by discriminatory animus, rather than solely by its *belief* that [the employee] violated company policy.").  Plaintiff argues that, when Senn and Bormann met with Yousuf on February 17, they knew that Yousuf had flown back from Europe in order to work and had not intended to abandon her job.  But it is not relevant whether Senn and Bormann thought that Yousuf intended to abandon her job if they believed that Yousuf had in fact abandoned her job, regardless of her intention, when she failed to return to work on the date that they expected her back.

Therefore, even if Ness or Kubrom approved a leave extension for Yousuf, that fact does not undermine Fairview's stated justification that Yousuf was terminated for her failure to return from her leave as scheduled because the relevant decision makers believed this non-discriminatory reason to be true.

      *ii.*     *Fairview's Adherence to Employment Policies*

A plaintiff may also prove pretext by demonstrating "that the employer deviated from its policies." *Stallings,* 447 F.3d at 1052.  Yousuf argues that Fairview did not adhere to its absenteeism policy and this failure is pretextual evidence of discrimination.

14

Yousuf's case is one in which multiple and seemingly contradictory clauses in the employer's policies could have reasonably been applied.  Yousuf points to two phrases in the absenteeism policy that work in her favor.  First, the policy states that "[s]ingle major occurrences are not generally considered to be an issue."  Dep. Ex. 9 at FV000060.  Yousuf argues that her consecutive absences following the end of her leave were a single major occurrence within the meaning of this policy and thus they should not have been grounds for termination.  Second, the policy states that, in response to absences, "HR should be consulted prior to taking action," and "[i]nitial action will include a consultation with the employee to discuss . . . options to assist the employee in improving his/her unscheduled absenteeism."  *Id.*  Yousuf argues that she never received the consultation required by this policy clause.

Fairview argues that the leave policy and not the absenteeism policy is the relevant policy because Yousuf was terminated for failure to return from leave.  The leave policy states:  "If an employee exceeds [her] LOA without notification to [her] department manager/supervisor, and without receiving authorization to do so, the employee will be considered to have voluntarily terminated [her] employment without proper notice."  Dep. Ex. 9 at FV000057.  Alternatively, Fairview argues that, if the absenteeism policy applies, the termination of Yousuf was proper under that policy, which, in addition to the language quoted by Yousuf, states:  "Unapproved absences, without notification, of three consecutive scheduled shifts will be considered a voluntary resignation."  *Id.* at FV000060.

This mix of permissive and mandatory language in different policy clauses complicates the task of interpreting Fairview's policies.  *See State of Mo. ex rel. Freeman v. Block*, 690 F.2d 139, 145 (8th Cir. 1982).  But this Court is not tasked with determining the optimal way to

construe and reconcile these clauses as they apply to Yousuf's facts. Rather, the issue is whether Fairview's adherence to one set of policy clauses over another is evidence of discrimination.

Fairview's employment action is consistent with the specific, mandatory clause that exceeding a leave of absence is grounds for termination. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 996 (8th Cir. 2011) (employer did not deviate from its policy where "the quoted language does not mandate" employer to act). Yousuf points to no evidence suggesting that Fairview acted discriminatorily when it adhered to this clause instead of other seemingly contradictory clauses. Yousuf has not alleged that Fairview has ever applied different policy clauses to employees in similar situations, and there is no evidence that Fairview considered any impermissible factor when reconciling these clauses.

Because Fairview can point to clear and mandatory language in its policies and Yousuf has not provided evidence undermining Fairview's decision to apply that language, Fairview's policies do not provide a basis for showing that Fairview's stated reason for termination is unworthy.

   iii. *Fairview's Shifting Explanation*

A plaintiff may also prove pretext by demonstrating "that the employer changed its explanation for why it fired the employee." *Stallings*, 447 F.3d at 1052. To give rise to an inference of pretext, a change in explanation for termination must be substantial. *See Trans States Airlines, Inc.*, 462 F.3d at 995. Yousuf argues that Fairview has changed its explanation for termination and this shift is evidence of discrimination.

The February 10, 2009 termination letter states that Yousuf was terminated because she did not return from leave, and the February 17 documents list the reason as job abandonment. While these documents are consistent, Yousuf alleges that, in her conversations with Senn and

Bormann on February 2 and 17, they told her that Fairview was cutting her hours for budgetary reasons. Yousuf Dep. 62:25-63:15, 68:3-15.

The Eighth Circuit's recent opinion in *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088 (8th Cir. 2014), is instructive as to whether these facts undermine Fairview's legitimate explanation for termination. In *Malloy*, an employee was terminated because of her repeated absences from work. *Id.* at 1092. Later, one of the managers who had participated in the termination decision said that the employee's poor work performance contributed to his decision to terminate, though none of the termination-related documents mentioned the plaintiff's work performance and the employer otherwise maintained throughout the dispute that she was terminated for poor attendance. *Id.* at 1090, 1092. The court held that, on these facts "[t]here has been no substantial change in the employer's stated reason." *Id.* at 1092. "That [the manager] supplemented the consistent explanation with comments about [the employee's] performance—perhaps to explain why leniency was unwarranted in this instance—does not undermine the employer's legitimate reason for the action." *Id.*

Like *Malloy*, this case involves an employee who was terminated after missing several shifts, the absences or missed shifts were the reason given for termination in the termination-related documents, and the employer has not changed that explanation, though the employer's managers who participated in the termination decision made comments to Yousuf—perhaps to soften the message—attributing the adverse employment action to an additional factor.

In any event, there is no dispute that any comment about budget cuts was made before the formal termination paperwork was prepared on February 17, 2009. Since then, Fairview, Senn, and Bormann have not articulated a different explanation other than job abandonment. Like the supervisor's comment suggesting an additional motivation for termination in *Malloy*, Senn's and

17

Bormann's alleged comments about budget cuts do not undermine the employer's legitimate reason for the employment action. *Id.* at 1091-92.

>    iv.   *Discriminatory Attitude*

Yousuf argues, without citation to authority, that there is "evidence that a discriminatory attitude existed in the workplace." Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 29. The proffered evidence of this discriminatory attitude is Senn's comments on February 2, which, as previously discussed, are insufficient to create a trial-worthy issue.

Fairview has offered a legitimate, nondiscriminatory reason for terminating Yousuf. The burden is on Yousuf to provide evidence of pretext that undermines Fairview's legitimate reason. Even if Senn's alleged comments on February 2 are evidence of bias, they are insufficient by themselves to create a trial-worthy issue. The record is devoid of other evidence sufficient to create a trial-worthy issue.

## IV.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 49] is GRANTED and Plaintiff's claims are DISMISSED with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 24, 2014

> s/Joan N. Ericksen
> JOAN N. ERICKSEN
> United States District Judge