UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Khadara-Ayan Yousuf,

        Plaintiff,

v.                                                                   Case No. 12-cv-2191 (JNE/SER)
                                                                 ORDER

Fairview Health Services d/b/a
University of Minnesota Medical Center, Fairview,

        Defendant.

Plaintiff Khadara-Ayan Yousuf, a U.S. citizen and a Muslim woman of Somali national origin, sued her former employer, Defendant Fairview Health Services, for discrimination based on race, sex, pregnancy, religion, and national origin in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981. Fairview moved for summary judgment. In defending that motion, Yousuf was represented by Nichols Kaster, PLLP. In an October 24, 2014 Order, the Court granted Fairview's motion and dismissed Yousuf's claims. The Court dismissed Yousuf's interrelated sex and pregnancy discrimination claims because there was no evidence Yousuf's supervisors were aware of her pregnancy. Yousuf filed an appeal pro se. The Eighth Circuit Court of Appeals vacated with respect to the pregnancy-related claims and remanded for this Court "to consider in the first instance whether the summary judgment record presented sufficient evidence from which a reasonable inference could be drawn that FHS discriminated against Yousuf based on her capacity to become pregnant." For the reasons stated below, the Court finds that the record does not support a reasonable inference of discrimination based on Yousuf's capacity to become pregnant.

**BACKGROUND**

The facts are recounted in the October 24 Order, and the Court provides only a brief summary here. Yousuf worked as a lab technician at Fairview from 2005 until she was terminated in February 2009. In October 2008, Yousuf informed Fairview that her husband had been injured in a car accident in Belgium. Fairview, pursuant to the Family Medical Leave Act (FMLA), approved a twelve-week leave of absence for Yousuf through Monday, January 19, 2009. Yousuf left for Europe on October 27. Yousuf alleges she requested and received an extension until February 16 from Cindy Ness, the scheduling coordinator for the lab. Yousuf does not allege she discussed the extension with Chris Senn or Priscilla Bormann, the decision makers who terminated Yousuf. Fairview scheduled Yousuf to work several shifts from January 22 through February 15. It is undisputed that Yousuf missed these shifts and did not return to Minnesota until February 16. Fairview terminated Yousuf for the stated reason that she did not return from her FMLA leave and abandoned her job.

Yousuf alleges she became pregnant in December 2008 while on leave. Yousuf did not tell Senn or Bormann about her pregnancy, and there is no evidence they knew she was pregnant, prior to their decision to discharge her.

**DISCUSSION**

Yousuf responded to Fairview's motion for summary judgment on her sex and pregnancy discrimination claims. She asserted in her papers, and through counsel at oral argument, that, although Fairview did not know she was pregnant, her claims were sustainable if she could establish that she in fact was pregnant.[1] She presented no argument or evidence that she, as a

---

[1] In a footnote, Yousuf argued that it was immaterial that Yousuf had not told anyone at Fairview about her pregnancy because there was evidence Fairview "assume[d] that Yousuf was pregnant at the time—which she was."

person with the capacity to become pregnant, was treated differently than any similarly situated person who did not have the capacity to become pregnant. Having now reviewed Yousuf's pro se submission to the Eighth Circuit, the Court turns to the record evidence—whether brought to the Court's attention in the Rule 56 proceedings or not—with an eye to determining if a triable issue exists as to discrimination based on Yousuf's capacity to become pregnant. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls., Inc.*, 499 U.S. 187, 206–07, 211 (1991).

Yousuf's evidence in this regard centers on evidence of a telephone conversation she had with Fairview supervisors on February 2, 2009, after the FMLA leave expired. On that date, Yousuf, from Europe, spoke with Senn and Bormann at Fairview. In her deposition testimony, Yousuf recounted part of the conversation as follows:

> [Senn] would just repeatedly say, 'Are you coming back? Are you staying [in] Germany and raising a family?' . . . She said she heard a rumor that [I was] staying in Germany and these people have babies left and right. And I said, 'What do you mean by that?' She said, 'Never mind,' and she just moved on.

A jury might, if it believed that Senn said these words, decide that the question about Yousuf intending to raise a family in Germany is akin to Senn asking whether Yousuf was planning on having a child. While such a comment may be inappropriate or unprofessional, it is not strong evidence of pregnancy discrimination because the question does not reveal bias against pregnancy or how the employer would respond if the employee were pregnant or intending to become pregnant. *See Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 809–810 (8th Cir. 2007) (holding that a supervisor's remark was not direct evidence of pregnancy discrimination because "the remark did not reflect a negative attitude toward pregnancy generally and in no way forecast how the employer would deal with the adverse situation if it arose"). That is especially true here because the question coupled raising a family with staying in

3

Germany. The question reveals little or nothing about what Fairview's attitude would be if Yousuf returned from Europe (it seems she was actually in Belgium rather than Germany), returned to work, and also raised a family. Yousuf's request for FMLA leave had been granted, no questions asked, and the alleged telephone call took place after the expiration of that leave, at which time Yousuf had still not returned to the United States.

A reasonable jury could find that Senn's statement "these people have babies left and right" reflects a bias against employees who are frequently pregnant. But it does not clearly evince a discriminatory motive. The comment does not forecast how Fairview would respond to news of employees' pregnancies generally or to Yousuf revealing her apparently first pregnancy specifically, and the comment is not directly related to Yousuf's employment status. *See Rivers-Frison v. S.E. Missouri Comm. Treatment Cntr.*, 133 F.3d 616, 619 (8th Cir. 1998) (holding that a supervisor's comments were not direct evidence of discrimination because they "had no relation to [the plaintiff's] employment status or to the conduct of the [employer's] business").

Senn's comments by themselves do not support a reasonable inference that Fairview discriminated against Yousuf based on her capacity to become pregnant.

Yousuf also proffers evidence of a handwritten note signed by a person named Jill Fischer, who, according to Yousuf, was a coworker at Fairview. The note states:

> I overheard Cindy Ness (a lab supervisor) talking to other employees in the lab (Sandy Dale) about Ayan's termination. Cindy said that Ayan will not be coming back to work, and she was talking about Ayan being pregnant.

This handwritten statement, alleged by Yousuf to be a declaration by Fischer reporting a statement Ness made to a third party, is inadmissible hearsay. The Court does not accord weight to this evidence. *See* Fed. R. Evid. 801; *Novotny v. Tripp County*, 664 F.3d 1173, 1178 (8th Cir. 2011). There is no record evidence from which the Court could conclude that the note falls under a hearsay exception. In fact, the only admissible evidence regarding this alleged conversation is

4

an affidavit from Sandy Dale stating that she does not remember Ness making these comments and that she is reasonably confident she would remember such a conversation if it had occurred. Even if the note were admissible under a theory not raised by the parties or evident to this Court, it would not be strong evidence of discrimination because it is undisputed that Ness was not a decision maker responsible for the adverse employment action. *See Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014) ("[S]tatements by nondecisionmakers are not direct evidence" of discrimination.) (internal quotation marks omitted).

Yousuf testified at deposition that she overheard Ness discussing with another employee how "we kind of hate everybody who is FMLA because [when] they leave, we have to replace them or retrain them in [a] different department." Yousuf's claim is for pregnancy discrimination and is not brought under the FMLA. However, drawing all inferences in Yousuf's favor, it can be inferred from the comment that Ness would also hate when employees were pregnant because they would likely take FMLA leave to care for their newborns. But Yousuf does not provide even the roughest time line for the comment; it could have been years before she was discharged. At the very latest, for Yousuf to have overheard the comment, it must have been made before she flew to Europe, which was more than three months before she was discharged. Accordingly, the comment was not only by someone who was not a decision maker, it was not contemporaneous with the adverse employment decision. Remote in time statements by non-decision makers and unrelated to the decisional process are of extremely little weight in determining an employer's motive. *See Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 898 (8th Cir. 2004).

The Court finds that the statements by Senn and Ness are insufficient to support a reasonable inference that Fairview discriminated against Yousuf on the basis of her capacity to become pregnant. Yousuf has no other persuasive evidence to support her claims. As explained

in the October 24 Order, there is no comparative evidence of discrimination on the record. Unlike *Johnson Controls*, there is no evidence that Fairview treated women of child-bearing age differently from anyone else. 499 U.S. at 191–92. Yousuf does not allege she was treated differently than other similarly situated Fairview employees. Moreover, if it is true, as Yousuf asserts, that Fairview believed Somali women are often pregnant, she has no evidence that this belief influenced staffing decisions. It is undisputed that, out of the twenty shifts Yousuf missed, Fairview replaced her six times. All six replacements were "diverse," five of the replacements were women, and two of them were Somali women. *See* Doble Aff. Ex. C (Docket No. 52-3). Twenty-eight employees were given overtime shifts in the two months following Yousuf's discharge: 79% were women and 25% were Somali women. *See* Winter Decl. Ex. 5 (Docket No. 54-5).

In addition to direct evidence, a plaintiff can show discrimination through evidence of pretext. *See Moody*, 771 F.3d at 1097. The Court's October 24 Order thoroughly explained why Yousuf's evidence of pretext is unpersuasive. The appellate court's remand order flagged no concerns about the Court's pretext analysis, and for that reason it is not repeated here.

In remanding, the Eighth Circuit cited to *Walsh v. National Computer Systems, Inc.*, 332 F.3d 1150 (8th Cir. 2003), which upheld a jury finding of discrimination. In *Walsh*, the evidence established that after the plaintiff had become pregnant, taken maternity leave, and returned to work, her supervisor treated her worse than her otherwise similarly situated peers. For example, the supervisor required the plaintiff but not others to submit a vacation form and told her she must make up "every minute" spent on doctors' appointments when "[n]o other employee was required to make up work for time missed due to appointments." *Id.* at 1155. Other account representatives left work at 3:45 but the plaintiff's request to leave work at 4:30 rather than 5:00

drew a comment from her supervisor that "maybe she should look for another job." *Id.* The supervisor also made several comments to the plaintiff that reflected a strong bias against her being pregnant. One day the plaintiff fainted at work and the next day her supervisor stopped by her cubicle and said, "You better not be pregnant again!" *Id.* at 1160. The supervisor at one point threw a phone book on the plaintiff's desk and told her to find an after-hours pediatrician. *Id.* at 1155. The Eighth Circuit held that the supervisor's comments, combined with the disparate conduct toward the plaintiff, "provide ample support for the jury's finding that [the plaintiff] was discriminated against on the basis of her pregnancy." *Id.* at 1160.

Here, there is no evidence of disparate conduct toward Yousuf, and nothing Senn allegedly said in the February 2, 2009 conversation was in the same ballpark as the bullying or threats made by the supervisor in *Walsh*.

The record does not support a reasonable inference of discrimination based on Yousuf's capacity to become pregnant. It also does not support an inference that Fairview terminated Yousuf's employment because she was known or suspected to be pregnant. Yousuf's sex and pregnancy discrimination claims fail.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 49] is GRANTED and Plaintiff's sex and pregnancy discrimination claims are DISMISSED with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: July 31, 2015            s/Joan N. Ericksen
                                JOAN N. ERICKSEN
                                United States District Judge